1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7
8
9
10

LORENE ANGUIANO, BARBARA
DOBBS, ALICIA BURGOS, MARY
CARLSON, THOMAS GUILLEN, MARCEL
STOKES, BRANDON JOHNSON,
ANDREW MAGUIRE, ANA METTALI,
AND SAMUEL WADE, individually and on
behalf of all others similarly situated,

11          Plaintiffs,

12      v.

13    DOUBLEDOWN INTERACTIVE LLC,

14          Defendant.

NO.

**CLASS ACTION COMPLAINT**

(DEMAND FOR JURY TRIAL)

15

16      Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary Carlson, Thomas

17  Guillen, Marcel Stokes, Brandon Johnson, Andrew Maguire, Ana Mettali, and Samuel Wade

18  individually and on behalf of all others similarly situated, make the following allegations

19  pursuant to the investigation of their counsel and based upon information and belief, except as

20  to allegations specifically pertaining to themselves and their counsel, which are based on

21  personal knowledge.

22                    **INTRODUCTION**

23      1.      Between July 2, 2023 and May 31, 2025, the time period relevant to this action,

24  Defendant DoubleDown Interactive LLC owned, operated, and received significant revenue

25  from its online "social" casino available at www.doubledown.com and on various mobile apps,

26  where it offered casino-style slots games that operated based on a digital currency called

27

CLASS ACTION COMPLAINT - 1
CASE NO.

1  "coins"– which could be purchased and wagered for extended gameplay along with other

2  upgrades and rewards (the "DoubleDown Gambling Platform").

3      2.    While Defendant advertised and promoted the DoubleDown Gambling Platform

4  to persons across the country as a legitimate online business, giving it an aura of legitimacy and

5  legality to Plaintiffs and Class members, the DoubleDown Gambling Platform was actually a

6  dangerous and plainly unlawful gambling enterprise.

7      3.    The scheme went like this: between July 2, 2023 and May 31, 2025, Defendant

8  sold digital coins to consumers on the DoubleDown Gambling Platform and then immediately

9  accepted those coins back (from the consumers who purchased them) as wagers on the outcomes

10 of the various casino-style games of chance offered on the DoubleDown Gambling Platform.

11 Consumers who purchased and then wagered virtual coins on the DoubleDown Gambling

12 Platform between July 2, 2023 and May 31, 2025 did so in the hopes of winning more of these

13 coins, which could be used to place more wagers and, in some instances, unlock new gambling

14 games or extend their gameplay once they ran out of coins to wager with. Between July 2, 2023

15 and May 31, 2025, Plaintiffs and numerous other citizens across the country lost significant sums

16 of their hard-earned money buying and placing wagers with coins on the DoubleDown Gambling

17 Platform, and Defendant in turn reaped enormous profits from the losses these people sustained.

18     4.    Washington, Utah, and California law clearly prohibit what Defendant has done.

19 These gambling laws prohibit persons from operating or receiving revenue from wagers placed

20 on "gambling devices." The games offered on the DoubleDown Gambling Platform between

21 July 2, 2023 and May 31, 2025 constituted "gambling devices," and Defendant amassed

22 significant revenue from Plaintiffs and numerous others in the United States who lost money

23 playing them

24     5.    Accordingly, Plaintiffs bring this Class Action Complaint, individually and on

25 behalf of all others similarly situated, to redress Defendant's widespread violations of

26 Washington's, Utah's, and California's gambling laws between July 2, 2023, and May 31, 2025.

27

CLASS ACTION COMPLAINT - 2
CASE NO.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1

## PARTIES

2      6.      Plaintiff Brandon Johnson is a natural person and a citizen and resident of

3 Santaquin, Utah.

4      7.      Plaintiff Andrew Maguire is a natural person and a citizen and resident of West

5 Jordan, Utah.

6      8.      Plaintiff Lorene Anguiano is a natural person and a citizen and resident of Ukiah,

7 California.

8      9.      Plaintiff Barbara Dobbs is a natural person and a citizen and resident of Folsom,

9 California.

10      10.      Plaintiff Alicia Burgos is a natural person and a citizen and resident of Desert Hot

11 Springs, California.

12      11.      Plaintiff Mary Carlson is a natural person and a citizen and resident of Victorville,

13 California.

14      12.      Plaintiff Thomas Guillen is a natural person and a citizen and resident of Chula

15 Vista, California.

16      13.      Plaintiff Marcel Stokes is a natural person and a citizen and resident of San

17 Bernardino, California.

18      14.      Plaintiff Ana Mettali is a natural person and a citizen and resident of San

19 Francisco, California.

20      15.      Plaintiff Samuel Wade is a natural person and a citizen and resident of Los

21 Angeles, California.

22      16.      Defendant DoubleDown Interactive LLC is a private company organized and

23 existing under the laws of Washington, with its principal place of business in Seattle,

24 Washington. Defendant is thus a citizen of the state of Washington for purposes of assessing

25 this Court's subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §

26 1332(d) ("CAFA"). See 28 U.S.C. § 1332(d)(10) (providing that, for purposes of CAFA

27 jurisdiction, "an unincorporated association shall be deemed to be a citizen of the State where it

CLASS ACTION COMPLAINT - 3
CASE NO.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1  has its principal place of business and the State under whose laws it is organized"); Johnson v.

2  Kadiant LLC, 2024 WL 4616148, at *3 (E.D. Cal. Oct. 30, 2024) (collecting decisions holding

3  that a limited liability company is an "unincorporated association" under CAFA); Abrego

4  Abrego v. Dow Chem. Co., 443 F.3d 676, 680-84 (9th Cir. 2006) (discussing CAFA's changes

5  to federal diversity jurisdiction, and explaining that CAFA "departs from the rule that . . . a

6  limited partnership's citizenship for diversity purposes can be determined only by reference to

7  all of the entity's members"); Hernandez v. Pure Health Research LLC, 2023 WL 7029213, at

8  *3 (S.D. Cal. Oct. 25, 2023) ("[I]n a CAFA case, where a party is an LLC, the LLC's citizenship

9  shall be the State under whose laws it is organized and the State where it has its principal place

10 of business."). Between July 2, 2023 and May 31, 2025, Defendant DoubleDown Interactive

11 LLC operated the DoubleDown Gambling Platform at www.doubledown.com and on various

12 mobile apps, and received substantial revenue from the losses sustained by players who

13 purchased and wagered with virtual coins on the DoubleDown Gambling Platform across the

14 country.

15                           **JURISDICTION AND VENUE**

16       17.    This Court has subject matter jurisdiction over this civil action pursuant to CAFA,

17 28 U.S.C. § 1332(d), because there are more than 100 class members and the aggregate amount

18 in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class

19 member is a citizen of a state different from Defendant.  During just the nine-month period that

20 ended September 30, 2024, for example, Defendant generated over $205 million in revenue

21 attributable to losses sustained on the DoubleDown Gambling Platform by persons in the United

22 States. [1]  And during each month of 2024, roughly 1.4 million persons played the games offered

23

24

25

26   [1]    *See* IRS Form 6-K, DoubleDown Interactive Co., Ltd., Nov. 10, 2025, at F-18, available at

27 https://ir.doubledowninteractive.com/static-files/3a251350-e77c-44ea-8e24-25415f496dce   (last
   accessed Nov. 10, 2025).

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

on the DoubleDown Gambling Platform, at least hundreds of thousands of whom reside in the United States.[2]

18. The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

19. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' and the Class members claims occurred in and emanated from this District, including Defendant's operation of the DoubleDown Gambling Platform and its collection of the enormous revenues from the losses suffered by Plaintiffs and numerous other persons who purchased and placed wagers on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, within this judicial District.

## FACTUAL ALLEGATIONS

### I. Utah's Gambling Act

20. Utah's Gambling Act entitles "[a]n individual who suffers an economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record" to "bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees." Utah Code Ann. § 76-9-1412(1).

21. As defined in Utah's Gambling Act, a "fringe gaming device" is "a mechanically, electrically, or electronically operated machine or device" that:

(i)   is not an amusement device[3] or a vending machine[4];

---

[2]   *See* "Average monthly active users (MAU) of DoubleDown Interactive from 2019 to 2024, Statista, available at https://www.statista.com/statistics/248705/doubledown-interactive-annual-mau (last accessed Nov. 10, 2025).

[3]   An "amusement device" is "a game that . . . is activated by a coin, token, or other object of consideration or value" and "does not provide the opportunity to," *inter alia*, "enter into a . . . gambling event[.]" *Id.* § 76-9-1401(1)(a)(i)-(ii).

[4]   A "vending machine" is "a device . . . that dispenses merchandise in exchange for money or any other item of value[,] provides full and adequate return of the value deposited," and, *inter*

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1    (ii) is capable of displaying or otherwise presenting information on a screen or

2    through any other mechanism; and

3    (iii) provides the user with a card, token, credit, gift certificate, product, or

4    opportunity to participate in a contest, game, gaming scheme, or sweepstakes with

5    a potential return of money or other prize.

6    *Id.* § 76-9-1401(7)(a).

7        22.    A "video gaming device" is defined as "a device that includes all of the

8    following":

9            (a)    a video display and computer mechanism for playing a game;

10           (b)    the length of play of any single game is not substantially affected by

11                  the skill, knowledge, or dexterity of the player;

12           (c)    a meter, tracking, or recording mechanism that records or tracks any

13                  money, tokens, games, or credits accumulated or remaining;

14           (d)    a play option that permits a player to spend or risk varying amounts

15                  of money, tokens, or credits during a single game, in which the

16                  spending or risking of a greater amount of money, tokens, or credits;

17           (i)    does not significantly extend the length of play time

18                  of any single game; and

19           (j)    (ii) provides for a chance of greater return of credits,

20                  games, or money; and

21           (e)    an operating mechanism that, in order to function, requires inserting

22                  money, tokens, or other valuable consideration other than entering

23                  the user's name, birthdate, or contact information.

24    *Id.* § 76-9-1401(20).

25

26    _____

27    *alia*, "through which the return of value is <u>not conditioned on an element of chance or skill</u>[.]" *Id.*
      § 76-9-1401(19)(a)-(c).

23.    Finally, a "gambling device or record" is "anything specifically designed for use in gambling[5] or fringe gambling[6] or used primarily for gambling or fringe gambling." *Id.* § 76-9-1401(10).

24.    Utah's Gambling Act provides that an individual who suffers an economic loss as a result of any of the above-defined devices may recover "twice the amount of the economic loss" they suffered. Id. § 76-9-1412(1)-(2).

25.    As alleged below, between July 2, 2023 and May 31, 2025, Defendant violated Utah's Gambling Act by operating and amassing enormous revenue from the losses sustained by Utah residents on the illicit "fringe gambling devices," "video gaming devices," and "gambling devices or records" offered on its DoubleDown Gambling Platform.

## II.    Washington's Recovery of Money Lost at Gambling Act

26.    Washington's Recovery of Money Lost at Gambling Act entitles "[a]ll persons losing money or anything of value at or on any illegal gambling games" to "have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost." Wash. Rev. Code § 4.24.070.

27.    As defined in Washington's Gambling Act, a "gambling device" means:

(1) Any device or mechanism the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance,

---

[5]    "Gambling" is defined as "risking anything of value for a return or risking anything of value upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that someone will receive anything of value in the event of a certain outcome." *Id.* § 76-9-1401(8)(a).

[6]    "Fringe gambling" is defined as "any de facto form of gambling, lottery, fringe gaming device, or video gaming device that is given, conducted, or offered for use or sale by a business in exchange for anything of value or incident to the purchase of another good or service." *Id.* 76-9-1401(6)(a).

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

including, but not limited to slot machines, video pull-tabs, video poker, and other electronic games of chance;

(2) any device or mechanism which, when operated for a consideration, does not return the same value or thing of value for the same consideration upon each operation thereof;

(3) any device, mechanism, furniture, fixture, construction or installation designed primarily for use in connection with professional gambling; and

(4) any subassembly or essential part designed or intended for use in connection with any such device, mechanism, furniture, fixture, construction or installation.

*Id.* § 9.46.0241.

28.    "Gambling," as used in the Washington Gambling Act, is defined as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." Id. 9.46.0237.

29.    As alleged below, between July 2, 2023 and May 31, 2025, Defendant violated Washington's Gambling Act by operating and amassing enormous revenue from the losses sustained from United States residents who "gambled" by wagering "things of value" on the illicit "gambling devices" offered through the DoubleDown Gambling Platform.

**III.    California's Gambling Laws**

30.    California Penal Code § 330b(a) states that it is "unlawful for any person to make or to permit the making of an agreement with another person regarding any slot machine or device, by which the user of the slot machine or device, as a result of the element of hazard or chance or other unpredictable outcome, may become entitled to receive money, credit, allowance, or other thing of value or additional chance or right to use the slot machine or device, or to receive any check, slug, token, or memorandum entitling the holder to receive money, credit, allowance, or other thing of value."

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

31.     California Penal Code 330b(d) provides: "For purposes of this section, 'slot machine or device' means a machine, apparatus, or device that is adapted, or may readily be converted, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device[.]"

32.     California broadly defines "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value." Cal. Penal Code, § 330.2.

33.     As alleged below, during the relevant statutory period, Defendant violated California's ban on gambling by operating and amassing enormous revenue from the losses sustained by California residents on the illicit "slot machine or device" offered on its DoubleDown Gambling Platform.

**IV.    The Evils of Online Gambling**

34.     Gambling is one of the oldest and heavily regulated human behaviors. Even before the advent of science, religions across the world have recognized the inherent addictive nature of playing games of chance and banned them through biblical injunctions. As religious authority gave way to democratic governments, the vast majority of states in the country enacted legislation prohibiting or strictly regulating gambling activities. Unlike historical relics, these states have recognized that gambling poses a public health risk. Scientific research has confirmed and shed further light on the perils of gambling—ranging from mental health issues to physical, financial, and interpersonal problems.

35.     Against this backdrop, many states, including Utah and Washington, have been steadfast in maintaining and enforcing their gambling laws, even in the event federal law takes a more permissive approach. As stated by Utah's legislature in enacting the Gambling Act:

1    "If federal law authorizes online gambling in the states of the United States and

2    provides that individual states may opt out of online gambling, this state shall opt

3    out of online gambling in the manner provided by federal law and within the time

4    frame provided by that law."

5    Utah Code Ann. § 76-9-1402(4)

6    36.    Similarly, Washington's legislature unequivocally stated that:

7    [It's] the policy of the legislature, recognizing the close relationship between professional

8    gambling and organized crime, to restrain all persons from seeking profit from

9    professional gambling activities in this state; to restrain all persons from patronizing such

10    professional gambling activities; to safeguard the public against the evils induced by

11    common gamblers and common gambling houses engaged in professional gambling; and

12    at the same time, both to preserve the freedom of the press and to avoid restricting

13    participation by individuals in activities and social pastimes, which activities and social

14    pastimes are more for amusement rather than for profit, do not maliciously affect the

15    public, and do not breach the peace

16    Wash. Rev. Code § 9.46.010.

17    37.    Similarly, California has banned gambling for over a century. In 1872, California

18    enacted Penal Code Section 330, which provides in relevant part that:

19    "[e]very person who . . . conducts, either as owner or employee . . . *any banking or*

20    *percentage game* played with . . . any device, for money, checks, credit, or other

21    representative of value . . . is guilty of a misdemeanor."

22    Cal. Penal Code § 330 (emphasis added)

23    38.    With technological advances, however, many casinos and other gambling

24    operators proliferated into people's pockets through online websites and apps, including the

25    DoubleDown Gambling Platform. These online gambling platforms have been particularly

26    challenging to regulate because many states' anti-gambling statutes were originally enacted to

27    prohibit in-person gambling activities.

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

39.     Worse still, because these online gambling platforms operate outside of the confines of gambling laws, they knowingly rig the odds against users to further exploit them. For example, while slot machines in a physical casino are required to randomize their results, online gambling platforms tailor "wins" and "losses" to manipulate consumer engagement through powerful algorithms. As the CEO of a popular online gambling platform explained:

> The secret sauce of Playtika is our ability to work with AI. We know exactly when a player is going to stop playing. We know exactly when they're going to pay. We know how many times they come in each day. I can't say we can predict with 100 percent accuracy, but we can predict, for most of our players, their activities in our games. That's the real power behind the operations side. When you can predict this, you can find solutions to problems. If someone wants to move on from your game, to delete your app, you know how to handle that player. We sound the alarm. We know how to operate and make sure a player retains in the game.[7]

40.     Between July 2, 2023 and May 31, 2025, Defendant employed similar tactics to maximize the profits it reaped through the DoubleDown Gambling Platform.

**V.    The DoubleDown Gambling Platform**

41.     Between July 2, 2023 and May 31, 2025, Defendant owned and operated the DoubleDown Gambling Platform available at www.doubledown.com and on various mobile apps.  Between July 2, 2023 and May 31, 2025, the DoubleDown Gambling Platform allowed consumers across the United States to spend real money to purchase coins and to gamble with those coins on a wide variety of chance-based games, including slots.

42.     Between July 2, 2023 and May 31, 2025, the process of getting set up with an account to play the gambling games offered on the DoubleDown Gambling Platform simply

---

[7]     Dean Takahashi, *Playtika CEO Robert Antokol interview— Why player retention matters now, VENTUREBEAT* (Jan. 6, 2022), https://venturebeat.com/games/playtika-ceo-robert-antokol-interview-why-player-retention-mattersnow/.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1  required a consumer to input basic personal information, including, inter alia, his or her e-mail

2  address and phone number.

3          43.     After creating an account, the consumer could begin placing wagers on the

4  gambling games offered on the DoubleDown Gambling Platform with small periodic allotments

5  of free coins provided upon enrollment.

6          44.     After invariably losing the free allotments of coins, the consumer needed to

7  purchase more coins if he or she wished to continue wagering with them on the particular casino

8  game of their liking within the DoubleDown Gambling Platform between July 2, 2023 and May

9  31, 2025.

10         45.     Thus, between July 2, 2023 and May 31, 2025, after the consumer lost the free

11  allotments of coins, Defendant would aggressively attempt, through persistent pop-up screens

12  and pages, to sell the consumer additional coins – at varying prices depending on the amount of

13  coins the consumer wished to purchase.

14         46.     Between July 2, 2023 and May 31, 2025, purchasing additional coins on the

15  DoubleDown Gambling Platform could be made using a wide variety of payment methods,

16  including credit and debit cards. Regardless of the payment method, the purchased coins were

17  instantly available for gambling on the DoubleDown Gambling Platform.

18         47.     Between July 2, 2023 and May 31, 2025, the coins won by consumers playing

19  Defendant's games of chance were identical to the coins that Defendant sold.

20         48.     Freshly topped off with an additional allotment of purchased coins, the consumer

21  would wager those coins in the hopes of winning more coins that he or she would otherwise have

22  had to purchase.

23         49.     Notably, between July 2, 2023 and May 31, 2025, the outcome of every wager

24  placed on each of the games offered on the DoubleDown Gambling Platform was based on an

25  element of chance.

26         50.     Defendant maintains win and loss records and account balances for each person

27  who purchased coins and used those coins to place wagers on the DoubleDown Gambling

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

Platform between July 2, 2023 and May 31, 2025. Indeed, between July 2, 2023 and May 31, 2025, once Defendant's algorithms determined the outcome of a wager and Defendant displayed the outcome, Defendant adjusted the balance of coins in the person's account. Defendant keeps detailed records of each wager and its outcome for every player of every game offered on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

51.     Using the information provided by users at the time they register for accounts and make purchases of coins, as well as by analyzing users' IP addresses, Defendant has intimate knowledge of, and maintains records reflecting, the geographic locations (including city and state for U.S.-based players) from which each of its users purchased and lost coins wagering on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

52.     Thus, at the time Plaintiffs and the other members of the Class purchased coins on and lost coins placing wagers on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, Defendant had actual knowledge that these persons were located in Utah, Washington, California and every other state where the DoubleDown Gambling Platform was accessible based on the information they had provided while making purchases and the IP addresses associated with the devices from which they accessed the DoubleDown Gambling Platform. Defendant nonetheless happily pocketed the losses they sustained using purchased coins to place wagers on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

53.     Between July 2, 2023 and May 31, 2025, Defendant received significant revenue from U.S. residents through its illicit "gambling" games offered through the DoubleDown Gambling Platform – in direct violation of Utah's, Washington's, and California's gambling laws.

**VI.    Plaintiff Brandon Johnson's Experience**

54.     Prior to May 31, 2025, Plaintiff Brandon Johnson created an account on the DoubleDown Gambling Platform.

55.     Between July 2, 2023, and May 31, 2025, Plaintiff Brandon Johnson lost his

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

56.     Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Brandon Johnson continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to continue playing his games of choice, and to unlock additional games that require a higher amount of coins to play.

57.     Between July 2, 2023 and May 31, 2025, Plaintiff Brandon Johnson spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

58.     Between July 2, 2023 and May 31, 2025, Plaintiff Brandon Johnson resided in, was a citizen of, and was physically present in Utah and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

59.     Plaintiff has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

**VII.    Plaintiff Andrew Maguire's Experience**

60.     Prior to May 31, 2025, Plaintiff Andrew Maguire created an account on the DoubleDown Gambling Platform.

61.     Between July 2, 2023, and May 31, 2025, Plaintiff Andrew Maguire lost his periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

62.     Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Andrew Maguire continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to continue playing his games of choice, and to unlock additional games that require a higher amount of coins to play.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

63.    Between July 2, 2023 and May 31, 2025, Plaintiff Andrew Maguire spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

64.    Between July 2, 2023 and May 31, 2025, Plaintiff Andrew Maguire resided in, was a citizen of, and was physically present in Utah and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

65.    Plaintiff Andrew Maguire has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

## VIII.  Plaintiff Lorene Anguiano's Experience

66.    Prior to May 31, 2025, Plaintiff Lorene Anguiano created an account on the DoubleDown Gambling Platform.

67.    Between July 2, 2023 and May 31, 2025, Plaintiff Lorene Anguiano lost her periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

68.    Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Lorene Anguiano continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins she had purchased for the chance to win additional such coins, to continue playing her games of choice, and to unlock additional games that require a higher amount of coins to play.

69.    Between July 2, 2023 and May 31, 2025, Plaintiff Lorene Anguiano spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

70.    Between July 2, 2023 and May 31, 2025, Plaintiff Lorene Anguiano resided in, was a citizen of, and was physically present in California and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

71.     Plaintiff Lorene Anguiano has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

**IX.    Plaintiff Barbara Dobbs' Experience**

72.     Prior to May 31, 2025, Plaintiff Barbara Dobbs created an account on the DoubleDown Gambling Platform.

73.     Between July 2, 2023, and May 31, 2025, Plaintiff Barbara Dobbs lost her periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

74.     Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Barbara Dobbs continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins she had purchased for the chance to win additional such coins, to continue playing her games of choice, and to unlock additional games that require a higher amount of coins to play.

75.     Between July 2, 2023 and May 31, 2025, Plaintiff Barbara Dobbs spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

76.     Between July 2, 2023 and May 31, 2025, Plaintiff Barbara Dobbs resided in, was a citizen of, and was physically present in California and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

77.     Plaintiff Barbara Dobbs has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

**X.    Plaintiff Alicia Burgos' Experience**

78.     Prior to May 31, 2025, Plaintiff Alicia Burgos created an account on the DoubleDown Gambling Platform.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

79.     Between July 2, 2023, and May 31, 2025, Plaintiff Alicia Burgos lost her periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

80.     Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Alicia Burgos continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins she had purchased for the chance to win additional such coins, to continue playing her games of choice, and to unlock additional games that require a higher amount of coins to play.

81.     Between July 2, 2023 and May 31, 2025, Plaintiff Alicia Burgos spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

82.     Between July 2, 2023 and May 31, 2025, Plaintiff Alicia Burgos resided in, was a citizen of, and was physically present in California and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

83.     Plaintiff Alicia Burgos has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

**XI.    Plaintiff Mary Carlson's Experience**

84.     Prior to May 31, 2025, Plaintiff Mary Carlson created an account on the DoubleDown Gambling Platform.

85.     Between July 2, 2023, and May 31, 2025, Plaintiff Mary Carlson lost her periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

86.     Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Mary Carlson continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins she had purchased for the chance to win additional such coins, to

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

continue playing her games of choice, and to unlock additional games that require a higher amount of coins to play.

87.    Between July 2, 2023 and May 31, 2025, Plaintiff Mary Carlson spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

88.    Between July 2, 2023 and May 31, 2025, Plaintiff Mary Carlson resided in, was a citizen of, and was physically present in California and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

89.    Plaintiff Mary Carlson has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

**XII.    Plaintiff Thomas Guillen's Experience**

90.    Prior to May 31, 2025, Plaintiff Thomas Guillen created an account on the DoubleDown Gambling Platform.

91.    Between July 2, 2023, and May 31, 2025, Plaintiff Thomas Guillen lost his periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

92.    Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Thomas Guillen continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to continue playing his games of choice, and to unlock additional games that require a higher amount of coins to play.

93.    Between July 2, 2023 and May 31, 2025, Plaintiff Thomas Guillen spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

94.    Between July 2, 2023 and May 31, 2025, Plaintiff Thomas Guillen resided in,

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

was a citizen of, and was physically present in California and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

95.     Plaintiff Thomas Guillen has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

**XIII.   Plaintiff Marcel Stokes' Experience**

96.     Prior to May 31, 2025, Plaintiff Marcel Stokes created an account on the DoubleDown Gambling Platform.

97.     Between July 2, 2023, and May 31, 2025, Plaintiff Marcel Stokes lost his periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

98.     Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Marcel Stokes continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to continue playing his games of choice, and to unlock additional games that require a higher amount of coins to play.

99.     Between July 2, 2023 and May 31, 2025, Plaintiff Marcel Stokes spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

100.    Between July 2, 2023 and May 31, 2025, Plaintiff Marcel Stokes resided in, was a citizen of, and was physically present in California and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

101.    Plaintiff Marcel Stokes has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

**XIV.   Plaintiff Ana Mettali's Experience**

102.    Prior to May 31, 2025, Plaintiff Ana Mettali created an account on the DoubleDown Gambling Platform.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

103.    Between July 2, 2023, and May 31, 2025, Plaintiff Ana Mettali lost her periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

104.    Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Ana Mettali continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins she had purchased for the chance to win additional such coins, to continue playing her games of choice, and to unlock additional games that require a higher amount of coins to play.

105.    Between July 2, 2023 and May 31, 2025, Plaintiff Ana Mettali spent a significant amount of money purchasing coins from Defendant, and thereafter lost all or substantially all of those purchased coins playing the gambling games offered on the DoubleDown Gambling Platform.

106.    Between July 2, 2023 and May 31, 2025, Plaintiff Ana Mettali resided in, was a citizen of, and was physically present in California and lost money from Defendant's operation of the DoubleDown Gambling Platform within the state of Washington.

107.    Plaintiff Ana Mettali has not accessed the DoubleDown Gambling Platform at any point since May 31, 2025.

## XV.    Plaintiff Samuel Wade's Experience

108.    Prior to May 31, 2025, Plaintiff Samuel Wade created an account on the DoubleDown Gambling Platform.

109.    Between July 2, 2023, and May 31, 2025, Plaintiff Samuel Wade lost his periodic allotments of free coins by placing wagers on the DoubleDown Gambling Platform and purchased additional coins from Defendant.

110.    Thereafter, between July 2, 2023 and May 31, 2025, Plaintiff Samuel Wade continued to play the gambling games offered on the DoubleDown Gambling Platform by placing wagers with the coins he had purchased for the chance to win additional such coins, to

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1  continue playing his games of choice, and to unlock additional games that require a higher
2  amount of coins to play.

3      111.    Between July 2, 2023 and May 31, 2025, Plaintiff Samuel Wade spent a
4  significant amount of money purchasing coins from Defendant, and thereafter lost all or
5  substantially all of those purchased coins playing the gambling games offered on the
6  DoubleDown Gambling Platform.

7      112.    Between July 2, 2023 and May 31, 2025, Plaintiff Samuel Wade resided in, was
8  a citizen of, and was physically present in California and lost money from Defendant's operation
9  of the DoubleDown Gambling Platform within the state of Washington.

10      113.    Plaintiff Samuel Wade has not accessed the DoubleDown Gambling Platform at
11  any point since May 31, 2025.

12  <u>**CLASS ACTION ALLEGATIONS**</u>

13      114.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and
14  where applicable, 23(c)(4), Plaintiffs bring this action, on behalf of themselves and members of
15  the "Class" defined as follows:

16      All residents of the United States who purchased, wagered, and lost coins on
17      Defendant's DoubleDown Gambling Platform between July 2, 2023 and May 31,
18      2025, and who did not access the DoubleDown Gambling Platform after May 31,
19      2025.

20      115.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and
21  where applicable, 23(c)(4), Plaintiffs Brandon Johnson and Andrew Maguire bring this action
22  on behalf of themselves and members of the "Utah Subclass" defined as follows:

23      All residents of Utah who purchased, wagered, and lost coins on Defendant's
24      DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, and who
25      did not access the DoubleDown Gambling Platform after May 31, 2025.

26      116.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and
27  where applicable, 23(c)(4), Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1    Carlson, Thomas Guillen, Marcel Stokes, Ana Mettali, and Samuel Wade bring this action on

2    behalf of themselves and members of the "California Subclass" defined as follows:

3              All residents of California who purchased, wagered, and lost coins on Defendant's

4              DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, and who

5              did not access the DoubleDown Gambling Platform after May 31, 2025.

6         117.    Members of the Class are so numerous that their individual joinder herein is

7    impracticable.  The members of the Class number in the millions. The precise number of Class

8    members and their identities are unknown to Plaintiffs at this time but will be determined in

9    discovery.  The Class may be notified of the pendency of this action at the addresses found in

10   Defendant's records.

11        118.    Common questions of law and fact exist as to all Class members and predominate

12   over questions affecting only individual Class members. Common legal and factual questions

13   include, but are not limited to:

14             (a)    whether the DoubleDown Gambling Platform was illegal under

15                    Utah's, Washington's, and California's state gambling laws

16                    between July 2, 2023 and May 31, 2025;

17             (b)    whether Defendant is liable for managing, possessing, controlling,

18                    and/or profiting from the DoubleDown Gambling Platform between

19                    July 2, 2023 and May 31, 2025;

20             (c)    whether Defendant's participation in operating the DoubleDown

21                    Gambling Platform between July 2, 2023 and May 31, 2025

22                    constitutes an unfair and/or unlawful business practice under

23                    Washington's consumer protection statutes;

24             (d)    the amount of monetary relief the Class is entitled to recover from

25                    Defendant.

26

27

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

119.    The claim of the named Plaintiffs is typical of the claims of the members of the Class in that the named Plaintiffs and all Class members suffered monetary loss as a result of Defendant's DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025.

120.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

121.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

**CLAIM FOR RELIEF**
**FIRST CAUSE OF ACTION**
**Violation of Revised Code of Washington § 4.24.070, et seq.**

122.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

123.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

124.    Plaintiffs, members of the Class, and Defendant are all "persons" as defined by RCW § 9.46.0289.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

125.    The state of Washington's "Recovery of money lost at gambling" statute, RCW § 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

126.    Between July 2, 2023 and May 31, 2025, Plaintiffs and the Class purchased coins with real money from Defendant and used those coins to place wagers on the games offered on the DoubleDown Gambling Platform, which led Plaintiffs and the Class to "lo[se] money" as defined by the Act.

127.    All of the games offered on the DoubleDown Gambling Platform and played by Plaintiffs and members of the Class between July 2, 2023 and May 31, 2025 constituted "gambling," because Plaintiffs and the Class were required to "stak[e] or risk[] something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence." RCW § 9.46.0237

128.    All of the games offered on the DoubleDown Gambling Platform and played by Plaintiffs and members of the Class between July 2, 2023 and May 31, 2025 constituted "[c]ontest[s] of chance," because they were "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." RCW § 9.46.0225.

129.    Between July 2, 2023 and May 31, 2025, the coins that Plaintiffs and members of the Class purchased from Defendant, and that Defendant accepted from Plaintiffs and Class members as wagers on the outcomes of the games offered on the DoubleDown Gambling Platform, were each a "thing of value" within the meaning under RCW § 9.46.0285 because they permitted them to extend their games of choice and/or unlock additional games that required a higher amount of coins to play.

130.    All of the games offered on the DoubleDown Gambling Platform and played by Plaintiffs and members of the Class between July 2, 2023 and May 31, 2025 were not

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1  "Amusement game[s]" under RCW § 9.46.0201 because their outcomes were dependent entirely

2  upon chance and not upon the skill of the player and because the games were "contest[s] of

3  chance," as defined by RCW § 9.46.0225.

4      131.    Finally, between July 2, 2023 and May 31, 2025, all of the games offered on the

5  DoubleDown Gambling Platform were not "pinball machine[s] or similar mechanical

6  amusement device[s]" as contemplated because: (a) the games were electronic rather than

7  mechanical; (b) the games conferred replays, but they were recorded and could be redeemed on

8  separate occasions (i.e., they were not "immediate and unrecorded"); and (c) the games contained

9  electronic mechanisms that vary the chance of winning free games or the number of free games

10 which could be won (e.g., the games allowed for different wager amounts).

11     132.    By operating and receiving revenue from the Class members as a result of the

12 illegal gambling games Defendant offered on the DoubleDown Gambling Platform between July

13 2, 2023 and May 31, 2025, Defendant directly violated Washington's gambling laws and is liable

14 for damages to Plaintiffs and the Class members for losing money throughout the DoubleDown

15 Gambling Platform between July 2, 2023 and May 31, 2025. RCW § 4.24.070.

16             **SECOND CAUSE OF ACTION**

17     **Violation of Washington Consumer Protection Act, § RCW 19.86.010, et seq.**

18     133.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully

19 set forth herein.

20     134.    Plaintiffs bring this claim individually and on behalf of the members of the Class

21 against Defendant.

22     135.    Washington's Consumer Protection Act, RCW § 19.86.010, et seq. ("CPA"),

23 protects both consumers and competitors by promoting fair competition in commercial markets

24 for goods and services.

25     136.    To achieve that goal, the CPA prohibits any person from using "unfair methods

26 of competition or unfair or deceptive acts or practices in the conduct of any trade or

27 commerce…" RCW § 19.86.020.

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

137.    The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it . . . Violates a statute that contains a specific legislative declaration of public interest impact."

138.    Between July 2, 2023 and May 31, 2025, Defendant violated RCW § 9.46.010, et seq. which declares that:

> "The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control. It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace."

139.    Between July 2, 2023 and May 31, 2025, Defendant has violated RCW § 9.46.010, et seq., because its DoubleDown Gambling Platform offered illegal gambling games.

140.    Defendant's wrongful conduct occurred in the conduct of trade or commerce— i.e., while Defendant was engaged in the operation of making computer games available to the public.

141.    Between July 2, 2023 and May 31, 2025, Defendant's acts and practices were injurious to the public interest because Defendant, in the course of its business, continuously advertised to and solicited the general public in Washington State and throughout the United States to play its unlawful online casino games of chance. This was part of a pattern or

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

generalized course of conduct on the part of Defendant between July 2, 2023 and May 31, 2025, and during that time many consumers were adversely affected by Defendant's conduct and put the public at risk.

142.    Between July 2, 2023 and May 31, 2025, Defendant profited immensely from its operation of the unlawful games of chances offered through the DoubleDown Gambling Platform, amassing hundreds of millions of dollars from the losers of those gambling games.

143.    As a result of Defendant's conduct, Plaintiffs and the Class members were injured in their business or property—i.e., economic injury—in that they lost money wagering on Defendant's DoubleDown Gambling Platform.

144.    Defendant's unfair and deceptive conduct between July 2, 2023 and May 31, 2025 proximately caused Plaintiffs' and the Class members' injury because, but for the challenged conduct, Plaintiffs and the Class members would not have lost money wagering at or on Defendant's DoubleDown Gambling Platform, and they did so as a direct, foreseeable, and planned consequence of that conduct.

145.    Plaintiffs, on behalf of themselves and the Class members, seek to recover actual damages, treble damages, as well as attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Violation of Utah's Gambling Act, Utah Code Ann.§ 76-9-1401, et seq.

146.    Plaintiffs Brandon Johnson and Andrew Maguire repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

147.    Plaintiffs Brandon Johnson and Andrew Maguire bring this claim individually and on behalf of the members of the Utah Subclass against Defendant.

148.    Utah's Gambling Act provides that "an individual who suffers an economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record may bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees." Utah Code Ann. § 76-9-1412(1).

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

149.    Between July 2, 2023 and May 31, 2025, and while residing in Utah, Plaintiffs purchased coins with real money from Defendant and used those coins to place wagers on the games offered on the DoubleDown Gambling Platform, which resulted in Plaintiffs suffering "economic loss."

150.    Likewise, between July 2, 2023 and May 31, 2025, and while residing in Utah, at least tens of thousands of other persons (members of the proposed Utah Subclass) purchased coins with real money from Defendant and used those coins to place wagers on the games offered on the DoubleDown Gambling Platform, which resulted in each of these persons suffering "economic loss."

151.    Between July 2, 2023 and May 31, 2025, the coins that Plaintiffs and members of the Utah Subclass purchased from Defendant, and that Defendant accepted from Plaintiffs and Utah Subclass members as wagers on the outcomes of the games offered on the DoubleDown Gambling Platform, were each a "[]thing of value" within the meaning of section 76-9-1401(8)(a) of the UGA.

152.    Likewise, between July 2, 2023 and May 31, 2025, the coins that Plaintiffs and members of the Utah Subclass purchased from Defendant, and that Defendant accepted from Plaintiffs and the Utah Subclass members as wagers on the outcomes of the games offered on the DoubleDown Gambling Platform, were each a "representation of value" and thus constituted "gambling bets" within the meaning of section 76-9-1401(9) of the UGA.

153.    All of the games offered on the DoubleDown Gambling Platform and played by Plaintiffs and members of the Utah Subclass between July 2, 2023 and May 31, 2025 required Plaintiffs and Utah Subclass members to "risk[] [a] []thing of value for a return or . . . upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that [they] will receive [a] []thing of value in the event of a certain outcome." Id. § 76-9-1401(8)(a). Accordingly, by accepting the coins purchased by Plaintiffs and Utah Subclass members as wagers on the outcomes of games offered on the DoubleDown Gambling Platform

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1  between July 2, 2023 and May 31, 2025, Defendant engaged in "gambling" as defined in the

2  Act.

3         154.    All of the games offered on the DoubleDown Gambling Platform between July

4  2, 2023 and May 31, 2025 provided Plaintiffs and the Utah Subclass members the "opportunity

5  to . . . enter into a gambling event," and therefore were not "amusement devices" within the

6  meaning of the Act. Id. § 76-9-1401(1)(a)(i)-(ii).

7         155.    All of the games that Plaintiffs and the Utah Subclass members lost coins playing

8  on the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025 were

9  "conditioned on an element of chance or skill," and therefore were not "vending machines"

10 within the meaning of the Act. Id. § 76-9-1401(19)(a)-(c).

11        156.    All of the games offered on the DoubleDown Gambling Platform and played by

12 Plaintiffs and members of the Utah Subclass between July 2, 2023 and May 31, 2025 were

13 "capable of displaying or otherwise presenting information on a screen or through any other

14 mechanism," and "provide[d] [Plaintiffs and Class members] with a . . . token, credit, . . . or

15 opportunity to participate in a contest, game, [or] gaming scheme . . . with a potential return of

16 money or other prize." Id. § 76-9-1401(7)(a).  Accordingly, all of the games that Plaintiffs and

17 Utah Subclass members lost coins playing on the DoubleDown Gambling Platform between July

18 2, 2023 and May 31, 2025 constituted "fringe gaming devices" as defined under the Act. Id. §

19 76-9-1401(7)(a).

20        157.    All of the games offered on the DoubleDown Gambling Platform and played by

21 Plaintiffs and members of the Utah Subclass between July 2, 2023 and May 31, 2025 included

22 "a video display and computer mechanism for playing a game," "a meter, tracking, or recording

23 mechanism that records or tracks any money, tokens, games, or credits accumulated or

24 remaining," "a play option that permits a player to spend or risk varying amounts of money,

25 tokens, or credits during a single game, in which the spending or risking of a greater amount of

26 money, tokens, or credits . . . does not significantly extend the length of play time of any single

27 game[] and . . . provides for a chance of greater return of credits, games, or money," and "an

1    operating mechanism that, in order to function, requires inserting money, tokens, or other

2    valuable consideration other than entering the user's name, birthdate, or contact information."

3    Id. § 76-9-1401(20)(a), (c)-(e).  Moreover, "the length of play of any single game [offered on

4    the DoubleDown Gambling Platform and played by Plaintiffs and members of the Utah

5    Subclass] [wa]s not substantially affected by the skill, knowledge, or dexterity of the player[.]"

6    Id. 76-9-1401(20)(b). Accordingly, all of the games that Plaintiffs and the Utah Subclass

7    members lost coins playing on the DoubleDown Gambling Platform between July 2, 2023 and

8    May 31, 2025 constituted "video gaming devices" as defined under the Act. Id. § 76-9-1401(20).

9         158.    Moreover, because each of the games offered on the DoubleDown Gambling

10    Platform between July 2, 2023 and May 31, 2025 was a "fringe gaming device" and/or "video

11    gaming device" that was "conducted[] or offered for use or sale by [Defendant] in exchange for

12    [some]thing of value," i.e., purchased coins, Defendant's acceptance of coins purchased by

13    Plaintiffs and the Utah Subclass members as wagers on the games offered on the DoubleDown

14    Gambling Platform between July 2, 2023 and May 31, 2025 constituted "fringe gambling" within

15    the meaning of the Act. Id. § 76-9-1401(6)(a).

16         159.    All of the games offered on the DoubleDown Gambling Platform and played by

17    Plaintiffs and members of the Utah Subclass between July 2, 2023 and May 31, 2025 were

18    "specifically designed for use in gambling or fringe gambling or used primarily for gambling or

19    fringe gambling."  Id. § 76-9-1401(10).  Accordingly, all of the games that Plaintiffs and the

20    Utah Subclass members lost coins playing on the DoubleDown Gambling Platform between July

21    2, 2023 and May 31, 2025 constituted "gambling devices or records" as defined under the Act.

22    Id. § 76-9-1401(10).

23         160.    Thus, between July 2, 2023 and May 31, 2025, all of the games that Defendant

24    "operate[d]" on the DoubleDown Gambling Platform constituted "fringe gaming device[s],

25    video gaming device[s], [and] gambling device[s]", and Defendant "receive[d]" substantial

26    "revenue" from the coins purchased, wagered, and lost by Plaintiffs and members of the Utah

27    Subclass on the outcomes of those games. Id. § 76-9-1412(1).

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1    161.    By operating and receiving revenue from Utah residents as a result of the fringe

2    gaming devices, video gaming devices, and gambling devices or records Defendant offered on

3    the DoubleDown Gambling Platform between July 2, 2023 and May 31, 2025, Defendant

4    directly violated Utah's Gambling Act and is liable for damages to Plaintiffs and the Utah

5    Subclass members, in the amount of twice the aggregate sum of the "economic loss[es]" suffered

6    by Plaintiffs and Utah Subclass members on the DoubleDown Gambling Platform between July

7    2, 2023 and May 31, 2025. See id. § 76-9-1412(1)-(2).

8                            **FOUTH CAUSE OF ACTION**
                  **Violation of California's Unfair Competition Law ("UCL")**
9                        **Cal. Bus. & Prof. Code §§ 17200, et seq**

10    162.    Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary Carlson,

11    Thomas Guillen, Marcel Stokes, Ana Mettali, and Samuel Wade repeat the allegations contained

12    in the foregoing paragraphs as if fully set forth herein.

13    163.    Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary Carlson,

14    Thomas Guillen, Marcel Stokes, Ana Mettali, and Samuel Wade bring this claim individually

15    and on behalf of the members of the California Subclass against Defendant.

16    164.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

17    fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and

18    any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury

19    in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal.

20    Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or

21    herself and others similarly situated who are affected by the unlawful and/or unfair business

22    practice or act.

23    165.    As alleged in detail above, and incorporated herein by reference, Defendant's

24    operation of the DoubleDown Gambling Platform violates the UCL's proscription against

25    engaging in Unlawful Business Practices through its violations of the CLRA, Cal. Civ. Code §

26    1770, et seq.; and the following gambling laws:

27

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

(a)    **California's Gambling Control Act (Cal. Bus. & Prof. Code §§ 19800, et seq.):** Sections 19801 and 19850 of the Gambling Control Act provide that unless licensed, state law prohibits commercially operated gambling facilities; that no new gambling establishment may be opened except upon affirmative vote of the electors; that all gambling operations and persons having significant involvement therein shall be licensed, registered, and regulated; and that all persons who deal, operate, carry on, conduct, maintain or expose for play any gambling game shall apply for and obtain a valid state gambling license. The DoubleDown Gambling Platform constitutes "gambling" because it is a game of "chance, including any gambling device…played for currency, check, credit, or any other thing of value that is []  prohibited and made unlawful by statute or local ordinance." Cal. Penal Code § 337j(e)(1) (emphasis added). Defendant has not applied for or obtained any state gambling license, and therefore violates California's Gambling Control Act.

(b)    **California Penal Code § 330a:** Section 330a states that "[e]very person, who has in his or her possession or under his or her control . . . or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by mean whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance . . . is guilty of a misdemeanor." Defendant violates this law because it operates the illegal DoubleDown Gambling Platform,

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

upon which persons are able to, and do, gamble in virtual games of chance.

(c)     **California Penal Code § 330b:** Section 330b states that "[i]t is unlawful for any persons to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to repair, sell, rent, lease, let on shares, lend or give away, or permit the operation, placement, maintenance, or keeping of, in any place, room, space, or building owned, leased, or occupied, managed, or controlled by that person, any slot machine or device, as defined in this section." Defendant violate this law because they permit the operation, placement, maintenance, or keeping of a slot machine or device as defined by Penal Code § 330b(d). The software for the DoubleDown Gambling Platform is an apparatus alone. Moreover, the game operating together with Defendant's servers are a machine, apparatus or device. The software for the game also modifies mobile phone devices into gambling devices as defined by Penal Code § 330b(d). Further, a user's mobile device is adapted by the game to create a slot machine or device. Users play the game and purchase "coins" from the games through hardware features of the mobile devices on which the DoubleDown Gambling Platform operates.

(d)     **California Penal Code § 330.1 et seq.:** Section 330.1(a) states that "[e]very person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports, or exposes for sale or lease, or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used, or kept in any room, space, or building owned, leased, or occupied by him or her or under his or her management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value or additional chance or right to use that slot machine or

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

device, or to receive any check, slug, token, or memorandum, whether of value or otherwise, entitling the holder to receive anything of value, is guilty of a misdemeanor." Defendant violates this law because it operates the illegal DoubleDown Gambling Platform, upon which persons are able to, and do, gamble in virtual games of chance.

(e)    **California Penal Code § 337j(a)(1):** By "operat[ing], carry[ing] on, conduct[ing], maintain[ing], or expos[ing] for play" unlicensed gambling in the state. Defendant violates this law because it operates the illegal DoubleDown Gambling Platform, upon which persons are able to, and do, gamble in virtual games of chance.

(f)    **California Penal Code § 337j(a)(2):** By "receiv[ing], directly or indirectly, any compensation or reward or any percentage or share of the revenue, for keeping, running, or carrying on any controlled game." Defendant violates this law because it operates the illegal DoubleDown Gambling Platform, upon which persons are able to, and do, gamble in virtual games of chance.

(g)    **Cal. Penal Code § 319:** Section 319 prohibits operating a lottery, which is defined as any "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property." Defendant violates this law because it operates the illegal DoubleDown Gambling Platform, upon which persons distribute their property (i.e., "coins"), which they purchased through valuable consideration based on chance.

(h)    **The Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955) (the "IGBA"):** The IGBA makes it a crime to "conduct, finance, manage, supervise, direct, or own all or part" of an illegal gambling business. Defendant violate the IGBA because its business involves five or more persons, has been in continuous operation for more than thirty days, and violates California's gambling laws as

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

alleged herein. By managing, directing, or controlling all or part of the conduct alleged herein with respect to its sale of virtual currency (in the form of coins) Defendant violate 18 U.S.C. § 1955.

(i)    **The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361- 5367) (the "UIGEA"):** The UIGEA makes it illegal for a "person engaged in the business of betting or wagering" to knowingly accept payments "in connection with the participation of another person in unlawful Internet gambling." 31 U.S.C. § 5363. "Unlawful Internet Gambling" is placing, receiving, or transmitting a bet or wager through, at least in part, the Internet where such bet or wager "is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 31 U.S.C. § 5362(10)(A). Defendant violates this law because it operates the illegal DoubleDown Gambling Platform, upon which persons are able to, and do, gamble in virtual games of chance.

166.    Each of these acts and practices constitutes an unlawful act, and thus an independent violation of the UCL.

167.    Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, et seq. in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

168.    There is no public utility to Defendant's illegal DoubleDown Gambling Platform. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason thereof, particularly considering the available legal alternatives for gaming apps in the marketplace. Defendant's illegal gambling practices only injure healthy competition and harm consumers.

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

169.    Plaintiffs and the California Subclass could not have reasonably avoided this injury.

170.    Defendant has also violated the UCL's proscription against engaging in Deceptive Business Practices.  As alleged in detail above, Defendant committed deceptive acts by inducing Plaintiffs and the California Subclass members to wager money on the illegal DoubleDown Gambling Platform.

171.    Specifically, Defendant committed deceptive acts by including misleading language and omitting material facts about the true nature of the DoubleDown Gambling Platform. These representations were false and misleading.

172.    Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

173.    As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiffs and other members of California Subclass suffered an injury in fact and/or lost money and property as described above.

174.    Through their unlawful, unfair, and deceptive acts and practices, Defendant improperly obtained money from Plaintiffs and members of the California Subclass. As such, Plaintiffs request that this Court order Defendant to restore this money to Plaintiffs and the members of the California Subclass, and to enjoin them from continuing to violate the UCL. Otherwise, Plaintiffs and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. Accordingly, Plaintiffs and the California Subclass lack an adequate remedy at law. Moreover, Plaintiffs assert this cause of action in the alternative to its claims for damages below. Finally, legal remedies available to Plaintiffs and the California Subclass are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not as equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. As such, the Court may award restitution even if it determines that Plaintiff and the California Subclass fail to sufficiently adduce evidence to support an award of damages. Further,

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1  damages and restitution are not the same amount. Unlike damages, restitution is not limited to

2  the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable

3  relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even

4  where the original funds have grown far greater than the legal rate of interest would recognize.

5  In short, significant differences in proof and certainty establish that any potential legal claim

6  cannot serve as an adequate remedy at law. Equitable relief is appropriate because Plaintiffs and

7  the California Subclass may lack an adequate remedy at law if, for instance, damages resulting

8  from their use of the DoubleDown Gambling Platform are determined to be an amount less than

9  paid to purchase coins. Without compensation for the full amount paid, Plaintiffs and the

10  California Subclass members would be left without the remedy they are entitled to in equity.

11  175.  Pursuant to Bus. & Prof. Code § 17203, Plaintiffs seek an injunction on behalf of

12  the general public enjoining Defendant from continuing to engage in the conduct described

13  above, as Defendant's wrongful conduct is ongoing.

14  176.  Plaintiffs also seek rescission and an order requiring Defendant to make full

15  restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the

16  California Subclass as permitted by Bus. & Prof. Code § 17203. Additionally, Plaintiffs and the

17  California Subclass members seek an order requiring Defendant to pay their attorneys' fees

18  pursuant to Cal. Code Civ. Proc. § 1021.5.

19  **FIFTH CAUSE OF ACTION**
   **Violation of California's Consumers Legal Remedies Act ("CLRA")**
20  **Cal. Civ. Code § 1750, et seq.**

21  177.  Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary Carlson,

22  Thomas Guillen, Marcel Stokes, Ana Mettali, and Samuel Wade repeat the allegations contained

23  in the foregoing paragraphs as if fully set forth herein.

24  178.  Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary Carlson,

25  Thomas Guillen, Marcel Stokes, Ana Mettali, and Samuel Wade bring this claim individually

26  and on behalf of the members of the California Subclass against Defendant.

27  179.  In light of the CLRA's underlying purpose to protect consumers and the liberal

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

construction with which courts should interpret it, Plaintiffs' purchase of Defendant's "coins" fall within the definition of a "goods or service" within the meaning of Cal. Civ. Code. § 1761 and 1770.

180.    Plaintiffs and each member of the California Subclass are consumers as defined by Cal. Civ. Code. § 1761(d).

181.    Defendant's sale of "coins" to consumers were "transactions" within the meaning of Cal. Civ. Code. § 1761(e). The purchase of "coins" is a transaction for accessing and using the DoubleDown Gambling Platform.

182.    Defendant violated, and continues to violate, the CLRA by, inter alia: (a) manipulating the odds of the games of chance in the DoubleDown Gambling Platform to increase their addictive qualities and to induce players to continue playing and spending more money; and (b) deceiving or confusing customers into believing that the gambling transactions made through the DoubleDown Gambling Platform confer or involve certain rights, remedies, or obligations (i.e., the right to recover winning and the obligation to pay for losses), when in fact any such rights, remedies or obligations are prohibited by law.

183.    Defendant also violated the following provisions of Cal. Civ. Code § 1770 (a) "Representing that goods or services have . . . characteristics . . . that they do not have"; (b) "Using deceptive representations . . . in connection with . . . services"; and (c) "Advertising goods or services with intent not to sell them as advertised."

184.    Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future. Plaintiffs and the California Subclass relied on Defendant's advertisements, representations and/or omissions to purchase "coins" on the DoubleDown Gambling Platform.

185.    As a direct and proximate result of Defendant's misconduct, Plaintiffs and the California Subclass members have suffered and will continue to suffer actual damages.

186.    Defendant's wrongful conduct is ongoing and presents a continuing threat to the California Subclass members.

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

187.    Pursuant to § 1782(a) of the CLRA, Plaintiffs' counsel has notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as prescribed by §1782, Plaintiffs will move to amend the Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiffs seek only injunctive relief.

## SIXTH CAUSE OF ACTION
### Violation of Penal Code section 496(c)

188.    Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary Carlson, Thomas Guillen, Marcel Stokes, Ana Mettali, and Samuel Wade repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

189.    Plaintiffs Lorene Anguiano, Barbara Dobbs, Alicia Burgos, Mary Carlson, Thomas Guillen, Marcel Stokes, Ana Mettali, and Samuel Wade bring this claim individually and on behalf of the members of the California Subclass against Defendant.

190.    As alleged above, Defendant's advertisements induced Plaintiffs to wager significant amounts of money on the false pretense that it was legal in California. Its purpose in making these false pretenses was to illegally take money from Plaintiffs and the California Subclass members.

191.    Pursuant to California Penal Code section 496(a) receiving property "that has been obtained in any manner constituting theft" is a criminal offense punishable by imprisonment. Pursuant to California law, procuring funds by false pretenses constitutes a violation of Section 496(a). Pursuant to Section 496(c), any person who violates Section 496(a) is liable for three times the actual damages, as well as attorney's fees.

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1   192. Defendant's conduct alleged above constitutes a violation of Penal Code section

2 496(a), entitling Plaintiffs to the relief provided by Section 496(c), including treble damages and

3 reasonable attorney's fees.

### **PRAYER FOR RELIEF**

5   WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

6 a judgment against Defendant as follows:

7  A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil

8     Procedure and naming Plaintiffs as the representative of the Class and

9     Plaintiffs' attorneys as Class Counsel to represent the Class;

10  B. For an order finding in favor of Plaintiffs and the Class on all counts

11     asserted herein;

12  C. For actual, compensatory, statutory, and/or punitive damages in amounts to

13     be determined by the Court and/or jury;

14  D. For an order of restitution and all other forms of equitable monetary relief;

15  E.  For prejudgment interest on all amounts awarded; and

16  F. For an order awarding Plaintiffs and the Class their reasonable attorneys'

17     fees, expenses, and costs of suit.

### **JURY DEMAND**

19 Plaintiffs demand a trial by jury on all causes of action and issues so triable.

21 RESPECTFULLY SUBMITTED AND DATED this 20th day of February, 2026.

22       NICK MAJOR LAW PLLC

24       By: */s/ Nicholas R. Major*
         Nicholas R. Major, WSBA No. 49579

25        E-mail: nick@nickmajorlaw.com
         450 Alaskan Way S, Suite 200

26        Seattle, Washington 98104
         Telephone: (206) 410-5688

27

**NICK MAJOR LAW PLLC**
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688

1    GUCOVSCHI LAW FIRM, PLLC.

2    Adrian Gucovschi, *Pro Hac Vice Forthcoming*
     E-Mail: adrian@gucovschilaw.com
3    140 Broadway, Fl. 46
     New York, New York 10005
4    Telephone: (212) 884-4230
     Facsimile: (212) 884-4230
5
6    HEDIN LLP

7    Frank S. Hedin, *Pro Hac Vice Forthcoming*
     E-Mail: fhedin@hedinllp.com
8    1395 Brickell Avenue, Suite 610
     Miami, Florida 33131-3302
9    Telephone: (305) 357-2107
     Facsimile: (305) 200-8801
10
11    *Attorney for Plaintiff And the Putative Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

NICK MAJOR LAW PLLC
450 Alaskan Way S, Suite 200
Seattle, Washington 98104
TEL. 206.410.5688